Filed 3/28/14  In re Martinez CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MANUEL MARTINEZ,<br><br>    on Habeas Corpus. | A136595, A138567<br><br>Del Norte County Super. Ct.<br>No. HCPB12-5048 |

Petitioner Manuel Martinez, a prisoner at Pelican Bay State Prison (PBSP), has filed two petitions for writ of habeas corpus.  Each contests a PBSP ruling denying him 100 sheets of graph paper that were sent to him by mail.  Petitioner contends he has constitutional and statutory rights to this paper.  Respondent Ron E. Barnes, Warden of PBSP, opposes both petitions.  We conclude Martinez does not have any right to possess this paper under the circumstances and deny both petitions.

## BACKGROUND

### *Martinez's First Petition for Writ of Habeas Corpus*

In September 2011, PBSP staff notified Martinez that he was denied a mail package containing 100 sheets of graph paper.  Copies of the notice contained in the record are not legible enough for us to determine the reason stated for this denial.

Martinez appealed this denial through PBSP's appeal process.  Understanding that "lined" paper was allowed, he contended the graph paper had the requisite horizontal lines (as well as vertical lines) and was not a threat to prison safety.  Also, he argued, horizontally lined paper could be converted into graph paper by the addition of vertical lines.

1

The first, second, and third levels of the PBSP appeal process affirmed the denial. The first and second level decisions cited either a Department Operations Manual (DOM) or PBSP Operations Manual Supplement that allowed writing tablets or 500 sheets of "white or yellow lined paper," each decision indicating that, therefore, graph paper was not allowed. The third level decision also relied on the PBSP Operations Manual Supplement's allowance of lined paper. The decision stated in relevant part: "[G]raphing paper, which has both vertical and horizontal lines is not listed as being allowed. The intention of the lined paper is to allow for writing paper. The main purpose of graph paper is for diagrams, drawings, graphs, and designs. It is not intended for writing." The decision also cited a variety of Penal Code statutes, California Code of Regulation sections, and DOM rules.

Martinez petitioned for a writ of habeas corpus in the Del Norte County Superior Court, which was denied, as was Martinez's motion to amend the judgment and request to file an amended petition.

Martinez then petitioned this court for a writ of habeas corpus. We issued an order to show cause why it should not be granted and respondent filed a return.

Respondent argues in his return that the denial of graph paper was justified in part because of the threat to prison safety posed by graph paper, based on a declaration by Lieutenant R. Graves of PBSP. Graves states he is aware of the reasons behind the implementation of the policies and procedures regarding graph paper based on his "training and experience at [PBSP] and [his] prior work as a correctional officer at another prison for five and a half years." He continues: "Graph paper is classified as contraband in part because graph paper is most used by inmates to trace and enlarge designs, and thus to design and create tattoo patterns. I have personally conducted searches of an inmate's cell or living area searches approximately 500 times over my career in the course of my duties. I have found tattoo paraphernalia (including ink, 'tattoo guns,' inmate-manufactured needles, or graph paper) approximately 75 times while conducting those searches. Where an inmate has one item of tattoo paraphernalia he usually has other tattoo paraphernalia items as well in a 'tattoo kit.' I have found

2

graph paper during cell searches approximately 10 times, and when I have found graph paper I also have found other tattoo paraphernalia. Additionally, I have conducted approximately five searches that yielded graph paper with gang symbols or tattoo designs drawn on the graph paper. Based on these experiences, as well as my familiarity with the policies and procedures surrounding graph paper, I am aware that graph paper is prohibited as contraband because of its use to design and create tattoo patterns."

We granted Martinez's motion to compel discovery of documents related to Lieutenant Graves's declaration. Apparently, respondent produced nothing in response to our order. This was explained in the April 18, 2013 letter by respondent's counsel, Deputy Attorney General Amber N. Wipfler, to Martinez's attorney, L. Richard Braucher, which Martinez submitted to this court attached to his motion for an extension of time to file his traverse, filed on May 16, 2013. In her letter, Wipfler also stated: "In response to the discovery request, I contacted Lt. Graves to find out more information about the occasions when he found graph paper and tattoo paraphernalia during searches of inmates' cells. I learned that in his current position as a correctional lieutenant, he does not personally conduct cell searches (although he occasionally supervises them). The searches referenced in his declaration took place between May 1984 and October 1989, when Lt. Graves was a correctional officer at the California Medical Facility (CMF) in Vacaville."

### Martinez's Second Petition for Writ of Habeas Corpus

In October 2012, PBSP staff again denied Martinez a mail package containing 100 sheets of graph paper, and notified him of it. The notification of disapproval quoted a "DOM 54010 Attach.10 # 27" (apparently a reference to item No. 27 listed in the PBSP Operations Manual Supplement, attachment 10 that was operative at that time) as stating: "No Graph Paper."

Again, Martinez appealed this denial through the three levels of the prison's appeal process, all of which affirmed the denial. The first level of appeal decision indicated he was not entitled to graph paper because the "[DOM] Supplement, Section 54010, Inmate Mail, Attachment 10, No. 27" (also apparently a reference to item No. 27

3

listed in the PBSP Operations Manual Supplement, attachment 10 that was operative at that time) stated, "No Graph paper." The second level decision indicated graph paper violated section 3006, subdivision (c)(3) of title 15 of the California Code of Regulations. The third level decision indicated the graph paper had been properly denied in accordance with title 15 of the California Code of Regulations (CCR), including section 3006.

Martinez sought a writ of habeas corpus in this court and we issued an order to show cause why it should not be granted. Respondent again filed a return.

This return does not include Graves's declaration. Also, although the PBSP appeal decisions referred to express prohibitions of graph paper, and although respondent states in his return that "[g]raph paper is *explicitly* prohibited" (italics added) pursuant to certain rules purportedly attached as exhibits, respondent's return exhibits only contain rules from 2011 that do not explicitly refer to graph paper.

On our own initiative, we consolidated consideration of Martinez's petitions. As a result of the confusion in respondent's papers, we issued an order in January 2014, which ordered the parties to submit supplemental briefs simultaneously and state what Department or PBSP rules or regulations have explicitly referred or do explicitly refer to graph paper, if any, from September 2011 to the present, when they went into effect and/or were terminated, and if they are presently in effect; and requested that the parties provide copies of any such rules or regulations to this court. We also informed the parties pursuant to Evidence Code sections 459 and 452 of our intention to take judicial notice of the record in each petition as part of our consideration of the other petition, including the April 18, 2013 letter from Wipfler to Braucher. We have received and considered supplemental briefing from both parties, and additional exhibits from respondent, and hereby take judicial notice as stated in our January 2014 order.

## DISCUSSION

Martinez argues he has a constitutional right to possess graph paper for two categories of reasons. First, he has a First Amendment right because the graph paper was "mail" and related to his right to free expression. Second, the CCR gives him a property

4

right in his mail unless it contains contraband expressly excluded by regulation, and no such regulation exists here.  We conclude neither argument has merit.

### I. *Martinez Does Not Establish a First Amendment Right to Possess Graph Paper*

Martinez first argues the two denials of graph paper violated his constitutional right to receive mail that does not threaten the safety and security of the prison, nor conflict with legitimate penological interests.  This argument is based on the premise that he has a constitutional right to possess graph paper while incarcerated.  He does not under the present circumstances.

As discussed in *In re Alcala* (1990) 222 Cal.App.3d 345 (*Alcala*), before the Legislature adopted the present statutory regime, "California statutory law provided for the 'civil death' of persons committed to prison." (*Alcala*, at p. 358.)  In 1975, "the California Legislature 'discarded the punitive version of [Penal Code] section 2600 entirely and replaced it with the current version, designed to *protect* rather than eviscerate the rights of prisoners.' " (*Id*. at p. 360.)  The Legislature enacted Penal Code sections 2600 and 2601 to protect the civil rights of prisoners, " 'evidently intend[ing] to place the rights of inmates *as nearly as possible* on the same footing as noninmates, subject to the needs of institutional security or protection of the public.' " (*Alcala*, at p. 360.)

Penal Code section 2600 states in relevant part:  "A person sentenced to imprisonment in a state prison . . . may during that period of confinement be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests."  "Penal Code section 2601, sometimes called the 'Inmate Bill of Rights,' specifies prisoners' 'guaranteed rights.' " (*In re Martinez* (2013) 216 Cal.App.4th 1141, 1152.)  These include, subject to certain limitations, the rights to "inherit, own, sell, or convey real or personal property, including all written and artistic material produced or created by the person during the period of imprisonment," correspond confidentially with any member of the State Bar or holder of public office, and purchase, receive, and read "any and all newspapers, periodicals, and books accepted for distribution by the United States Post Office," subject to specified exclusions.  (Pen. Code, § 2601, subds. (a), (b),

(c)(1).)  Prison authorities retain the right to open and inspect any packages received by an inmate.  (Pen. Code, § 2601, subds. (b), (c)(2)(A).)

Courts review a prisoner's claim that he or she has been denied civil rights allowed pursuant to Penal Code section 2600 by engaging in a three-step inquiry:  " '(1) Are any "rights" implicated?  (2)  If they are, does a "reasonable security" problem exist which might permit a deprivation of rights under the statute?  (3)  If so, to what extent are deprivations of those rights "necessary" to satisfy reasonable security interests.' " (*Alcala*, *supra*, 222 Cal.App.3d at p. 361 [concluding an individual's right to choose clothing and overall appearance is protected by the Fourteenth Amendment, but that prison authorities had properly restricted this right].)

Martinez's argument that his First Amendment right to freedom of expression has been violated by the denials fails because he does not provide any evidence or law to satisfy the first of the *Alcala* steps, i.e., that any of his constitutional rights are implicated by the denials.

Initially, Martinez's argument fails because of a glaring evidentiary omission: Martinez does not state in either petition how he intends to use the graph paper, or if and why he needs it.  Given that Martinez indisputably has access to other paper with which to express himself,[1] his need for this graph paper is not at all apparent to us.  Petitioner bears the burden of pleading and proving a sufficient factual basis for his claims.  (*People v. Duvall* (1995) 9 Cal.4th 464, 474-475.)

Second, Martinez cites only inapposite law in his effort to establish that his constitutional rights are implicated.  He relies principally on *In re Short* (1976) 55 Cal.App.3d 268 (*Short*) and *Procunier v. Martinez* (1974) 416 U.S. 396 (*Procunier*), overruled on other grounds in *Thornburgh v. Abbott* (1989) 490 U.S. 401, 411-414. Short sought a writ of habeas corpus in superior court, challenging the right of prison officials to open correspondence from a court to him outside of his presence pursuant to a Department of Corrections (Department) regulation.  (*Short*, at pp. 269-270.)  The

---

[1]  The parties do not dispute that, as indicated in this opinion, Martinez is allowed to have lined paper and drawing paper.

6

superior court granted the petition and ordered that the regulation be modified to require that correspondence be opened in the presence of the inmate and solely to check for contraband, and the Department appealed. (*Id*. at pp. 270, 272-273.) The appellate court agreed that the regulation had to be modified. In doing so, it discussed the constitutional right to privacy and the constitutional rights of prisoners to send and receive letters free of censorship, limited only by the practical necessities of prison administration, as held by the United States Supreme Court in *Procunier*. The court also discussed the prison authorities' right to open correspondence from an attorney to an inmate in the inmate's presence, not to read, but solely to ensure the letter did not contain contraband, as held in *Wolff v. McDonnell* (1974) 418 U.S. 539. (*Short*, at pp. 271-273.)

In *Procunier*, the Supreme Court held that certain Department regulations relating to the censorship of prisoner correspondence were unconstitutional. The court stated the issue before it was "the constitutionality of . . . rules restricting the *personal correspondence* of prison inmates." (*Procunier*, *supra*, 416 U.S. at p. 398, italics added.) Despite this limited focus, Martinez argues that the holding of *Procunier* applies to *all* mail, not just communications. This is incorrect. While the *Procunier* court occasionally referred to "mail," the subject of the regulation and the court's inquiry related to the censorship of mail correspondence, not contraband sent through the mail. (*Id*. at pp. 398-400, 407-409, 413-414.)

The *Short* and *Procunier* courts, therefore, considered a prisoner's right to private *communications* through the mail.[2] The packages of graph paper sought by Martinez are not communications; rather, as we will discuss, they are prohibited goods sent to the prisoner through the mails for an unknown purpose. In other words, they are contraband, not communications. Therefore, these cases are inapposite to the present circumstances.

The other cases cited by Martinez are equally unavailing to his constitutional argument. He points out that prisoners have a First Amendment right to telephone access subject to reasonable limitations, as discussed in *Johnson v. California* (2000) 207 F.3d

---

[2] This is also true for two other cases cited by Martinez, *Witherow v. Paff* (9th Cir. 1995) 52 F.3d 264, 265, and *Thornburgh v. Abbott*, *supra*, 490 U.S. at page 407.

7

650, and the constitutional right to paper and pen for drafting legal documents in order to ensure meaningful access to the courts, as held in *Bounds v. Smith* (1977) 430 U.S. 817, overruled in part in *Lewis v. Casey* (1996) 518 U.S. 343, 354. This argument implies that graph paper is somehow essential to Martinez's ability to communicate; nothing in the record suggests this is the case. Therefore, these cases are inapposite as well.

Petitioner also cites to his statutory right, pursuant to Penal Code section 2601, to "inherit, own, sell, or convey real or personal property, including all written and artistic material produced or created by the person during the period of imprisonment." (Pen. Code, § 2601, subd. (a).) He contends this "presupposes a right to create that artistic material." He notes that artistic expression is unquestionably shielded by the First Amendment, citing *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston* (1995) 515 U.S. 557, 569.

We reject this argument for two reasons. First, Martinez does not establish he needs, or even desires, graph paper in order to engage in any protected artistic expression.

Second, Penal Code section 2601, subdivision (a) does not presuppose any right of prisoners to *possess* an art supply such as graph paper (assuming for the sake of argument that Martinez intends to use it to create artwork). The Legislature did not establish such a right, and we cannot read it into the statute. (*People v. Turner* (2000) 78 Cal.App.4th 1131, 1140-1141 [referring to the " 'cardinal rule that courts may not add provisions to a statute' "].)[3]

---

[3] Notably, section 3192 of title 15 of the CCR states in relevant part: "An inmate's right to inherit, own, sell or convey real and/or personal property *does not include the right to possess such property within the institutions/facilities"* of the Department. (Cal. Code Regs., tit. 15, § 3192, italics added.) Also, as we will discuss, "[i]nmates may possess only the personal property, materials, supplies, items, commodities and substances, up to the maximum amount, received or obtained from authorized sources, as permitted in these regulations." (Cal. Code Regs., tit. 15, § 3006.)

## II. *Martinez Does Not Have Any Other Right to Possess Graph Paper*

Martinez also argues that he has a property interest in the graph paper established by the CCR, and that PBSP authorities unlawfully impinged on this property interest without affording him due process of law. Again, we disagree.

Martinez bases this argument on sections 3130 and 3134, subdivision (a) of title 15 of the CCR.[4] Section 3130 states in relevant part: "The sending and receiving of mail by inmates shall be uninhibited except as specifically provided for in this article." (§ 3130.) Section 3134, subdivision (a) states: "First-Class Mail can have the following items enclosed, including but not limited to" a list of items that does not include graph paper. Martinez argues graph paper is not prohibited, since the phrase "including but not limited to" in section 3134, subdivision (a) indicates the list that follows is not exclusive and, in any event, graph paper is not on the list.

Martinez's argument disregards that section 3130 does not give prisoners the unqualified right to possess the mail sent to them. Rather, it states that "[m]ail shall be delivered to inmates, regardless of housing, *unless it is contraband pursuant to section 3006*." (§ 3130, italics added.) Section 3006 specifically provides that prisoners are *not* permitted to possess "[c]ontraband," defined elsewhere as "anything which is not permitted, in excess of the maximum quantity permitted, or received or obtained from an unauthorized source," unless authorized by the institution head. (§§ 3006, subd. (c)(3), 3000.)

The relevant question, then, is whether graph paper is "not permitted," i.e., "contraband." We conclude it is for two reasons.

First, according to respondent, item No. 27 of attachment 10 to the PBSP Operations Manual Supplement have expressly prohibited graph paper since November 2011, which was prior to the third appeal decision affirming the denial of the package of graph paper that is the subject of Martinez's first petition, and before the denial of the

---

[4] All references to sections in this subpart are to title 15 of the CCR unless otherwise stated.

9

second package.[5]  Also, according to respondent, PBSP Operations Manual Supplement section 54010.8.1 has, since August 2012, expressly stated, "Graphing Paper is not allowed."[6]  Martinez does not contest the existence of these provisions, but states that he does not know if the prohibitions are presently in effect, if they ever were, or have been terminated.  Based on these representations and record, we conclude that, since November 2011, "graph paper" has been expressly designated as "contraband," which PBSP authorities are entitled to withhold pursuant to section 3130, Martinez has no property or other right to possession of this material.  Given these circumstances, we fail to see how any due process right of Martinez is violated by the prison's continued confiscation of the graph paper at issue.

Second, even without these changes in the PBSP rules, section 3134, subdivision (a)(6) indicates graph paper is not permitted as writing paper.  It refers to "[w]riting paper/tablets (white or yellow *lined only*—no cotton paper)."  (§ 3134, subd. (a)(6), italics added.)  By this limitation, it excludes other forms of paper, including graph paper.  Therefore, the CCR indicated at all relevant times that graph paper is "not permitted"; in other words it is "contraband."

We reject Martinez's implied argument that the "included but not limited" prefatory phrase stated in section 3134, subdivision (a) trumps the more specific "lined only" limitation stated in section 3134, subdivision (a)(6).  To the contrary, we conclude the latter is controlling.  (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 857 ["[u]nder well-

---

[5]  Respondent's counsel has submitted unauthenticated copies of three versions of attachment 10 to this court, which she represents went into effect in November 2011, August 2012, and September 2013 respectively, and further represents that the prohibition remains in effect.  Martinez has made no objection to this material or representation and, therefore, we consider it.

[6]  Respondent's counsel has submitted unauthenticated copies of two versions of PBSP Operations Manual Supplement section 54010.8.1 to this court, represented as going into effect in August 2012 and September 2013 respectively, and represented the prohibition remains in effect.  Martinez has made no objection to this material or representation and, therefore, we consider it.

established principles of statutory interpretation, the more specific provision [citation] takes precedence over the more general one [citation]"].)

We also reject Martinez's contention that graph paper *is* lined paper because it has lines running both horizontally and vertically. "Lined paper" does not have the mathematically precise grids that exist on the surface of graph paper; therefore, it is a distinctly different form of paper.[7]

Martinez also argues he has the right to possess graph paper based on a September 27, 2011 memorandum to all Department of Corrections and Rehabilitation inmates from Undersecretary Scott Kernan of the Department, in which Kernan indicated the Department was authorizing hobby items such as "drawing paper" in certain places, including, apparently, in Martinez's housing unit. Martinez does not explain why "drawing paper" must be graph paper, other than to point out that the third appeal decision regarding the first denial of graph paper stated that "drawing" was one of the purposes for graph paper. However, as Martinez acknowledges, the same appeal decision also stated that graph paper can be used to make diagrams, graphs, and designs as well. In other words, "graph paper" is not the same as "drawing paper," and nothing in Kernan's memorandum authorizes its use. In any event, as we have discussed, possession of graph paper has been expressly prohibited since November 2011, as stated in item No. 27 of attachment 10 to the PBSP Operations Manual Supplement, which prohibition was subsequently also added to PBSP Operations Manual Supplement section 54010.8.1 in August 2012.

Finally, Martinez argues that, pursuant to section 3136, the denial of graph paper cannot stand because graph paper is not "in clear violation" of sections 3006 or 3135, as required by section 3136. This is unpersuasive because graph paper has been designated as "contraband." In any event, section 3136 indicates only that "clear violations" of section 3006 (section 3135 is not relevant here) are referred to staff not below the level of

---

[7] Furthermore, Martinez's contention that a prisoner could draw vertical lines on lined papers ignores the difficulty of drawing so many vertical lines precisely on horizontally lined paper; in any event, the propriety of such an action is not before us.

correctional/facility captain, while violations "not in clear violation" of section 3006 are referred to the warden. (§ 3136, subd. (a).) Martinez fails to explain why this provision is relevant to his claim that the graph paper should have been allowed.

### III. *Other Arguments By the Parties*

In support of each petition, Martinez argues the denial of graph paper is unreasonable under the four-step analysis established by the Supreme Court in *Turner v. Safley* (1987) 482 U.S. 78. We do not address this analysis because it applies only when a regulation impinges upon a prisoner's constitutional rights. (*Id.* at p. 89.) As we have discussed, no such right is implicated here.

Finally, we note that, regarding Martinez's first petition, respondent contends that graph paper is a danger to prison safety because it has been used by prisoners to make gang tattoos. Respondent bases this contention on declaration statements by Lieutenant Graves of PBSP regarding his own inspections of tattoo paraphernalia he found in prisoner cells, which, he indicates by reference to his work at PBSP and use of the present tense in describing prisoners' use of graph paper, occurred at PBSP, as well as elsewhere. As we have discussed, the record indicates that, after we granted Martinez's motion to compel discovery, respondent's counsel stated by letter to Martinez's counsel that Graves's inspections occurred more than two decades ago, at another facility, *not* at PBSP in this century. We are very disturbed by the apparent obfuscation contained in the Graves declaration, whether the result of deliberate gamesmanship or inattention. Assertions affecting the conditions of prisoners require more than speculation based on stale, inapposite information, presented as current facts. Nonetheless, we conclude Martinez does not have a right to possess the graph paper without relying in any way on the Graves declaration.

### DISPOSITION

The petitions are denied.

_____
Brick, J.*

We concur:


_____
Kline, P.J.


_____
Richman, J.


* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.